UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

ALEXANDRIA DIVISION

| | |
|---|---|
| CHERICIA WOODS,<br>　　Appellant | CIVIL ACTION<br>NO. CV07-1991-A |
| VERSUS | |
| MICHAEL J. ASTRUE, COMMISSIONER<br>OF SOCIAL SECURITY,<br>　　Appellee | JUDGE DEE D. DRELL<br>MAGISTRATE JUDGE JAMES D. KIRK |

## REPORT AND RECOMMENDATION OF MAGISTRATE JUDGE

Chericia Woods ("Woods") filed an application for supplemental security income benefits ("SSI") on July 13, 2006, alleging a disability onset date of January 1, 2005 (Tr. p. 39).[1] That application was denied by the Social Security Administration (Tr. p. 34).

A de novo hearing was held on July 9, 2007, at which Woods appeared with her attorney (Tr. p. 406). The ALJ found that, although Woods suffers from severe diabetes mellitus, obesity, mild degenerative disc disease of the lumbar spine, mild osteoarthritis of both knees, and a history of accidentally cutting her finger

---

[1] Woods filed a previous application for SSI on November 17, 2005, alleging a disability onset date of June 17, 2003, due to "injured index finger and knee problems" (Tr. pp. 42, 47). That application was denied on February 16, 2006 (Tr. p. 34) and, apparently, Woods did not request a hearing on that application.

three years ago with the inability to completely flex the right index finger (Tr. p. 12), Woods has the residual functional capacity to perform the full range of light work, can perform her past relevant work as a retail sales clerk and, therefore, was not under a disability as defined in Social Security Act at any time through the date of the ALJ's decision on August 29, 2007 (Tr. p. 17).

Woods requested a review of the ALJ's decision, but the Appeals Council declined to review it (Tr. p. 2) and the ALJ's decision became the final decision of the Commissioner of Social Security ("the Commissioner").

Woods next filed this appeal seeking judicial review of the Commissioner's final decision. The sole issue raised by Woods on appeal is whether the ALJ failed to apply the proper legal standard in assessing Woods' credibility, resulting in an erroneous assessment of Woods' residual functional capacity and an erroneous finding that Woods can return to her past relevant work.

The Commissioner responded to Woods' brief, and Woods filed a reply brief. Woods' appeal is now before the court for disposition.

## Eligibility for SSI Benefits

To qualify for SSI benefits, a claimant must file an application and be an "eligible individual" as defined in the Act. 42 U.S.C. § 1381(a). Eligibility is dependent upon disability, income, and other financial resources. 42 U.S.C. § 1382(a). To establish disability, plaintiff must demonstrate a medically

2

determinable physical or mental impairment that can be expected to last for a continuous period of not less than 12 months. Plaintiff must also show that the impairment precludes performance of the work previously done, or any other kind of substantial gainful employment that exists in the national economy. 42 U.S.C. § 1382(a)(3).

Scope of Review

In considering Social Security appeals such as the one that is presently before the Court, the Court is limited by 42 U.S.C. §405(g) to a determination of whether substantial evidence exists in the record to support the Commissioner's decision and whether there were any prejudicial legal errors. McQueen v. Apfel, 168 F.3d 152, 157 (5th Cir. 1999). For the evidence to be substantial, it must be relevant and sufficient for a reasonable mind to support a conclusion; it must be more than a scintilla but need not be a preponderance. Falco v. Shalala, 27 F.3d 160, 162 (5th Cir. 1994), citing Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 482 (1971). Finding substantial evidence does not involve a simple search of the record for isolated bits of evidence which support the Commissioner's decision but must include a scrutiny of the record as a whole. The substantiality of the evidence must take into account whatever in the record fairly detracts from its weight. Singletary v. Bowen, 798 F.2d 818, 823 (5th Cir. 1986).

A court reviewing the Commissioner's decision may not retry factual issues, reweigh evidence, or substitute its judgment for

that of the fact-finder. Fraga v. Bowen, 810 F.2d 1296, 1302 (5th Cir. 1987); Dellolio v. Heckler, 705 F.2d 123, 125 (5th Cir. 1983). The resolution of conflicting evidence and credibility choices is for the Commissioner and the ALJ, rather than the court. Allen v. Schweiker, 642 F.2d 799, 801 (5th Cir. 1981). Also, Anthony v. Sullivan, 954 F.2d 289, 295 (5th Cir. 1992). The court does have authority, however, to set aside factual findings which are not supported by substantial evidence and to correct errors of law. Dellolio, 705 F.2d at 125. But to make a finding that substantial evidence does not exist, a court must conclude that there is a "conspicuous absence of credible choices" or "no contrary medical evidence." Johnson v. Bowen, 864 F.2d 340 (5th Cir. 1988); Dellolio, 705 F.2d at 125.

## Summary of Pertinent Facts

In November 2005, Woods was treated for back pain at the emergency room (tr. p. 398). Woods back' pain was sharp, moderate in severity, and with a gradual onset after lifting something at work (Tr. p. 399). Woods was diagnosed with lumbosacral sprain/strain and treated with Flexeril (Tr. pp. 400-401).

In January 2006, Dr. Devinder Verma, an internal medicine doctor, examined and evaluated Woods for complaints of an injury to her index finger and knee problems (Tr. p. 72). Dr. Verma noted Woods' complaints of knee pain for the past five years and her inability to fully flex her right index finger due to having accidentally cut it with a knife, an injury which required stitches (Tr. p. 72). Dr. Verma found Woods was obese at 5'6" tall and 238

4

pounds (Tr. p. 73), the x-rays of her left and right knees showed moderate osteoarthritis but normal joint spaces, crepitus was present in both knees, ranges of movements of both knees were normal, gait and station were normal, and grip strength was okay in the left hand and slightly decreased in the right hand (Tr. p. 73). Dr. Verma also found Woods had problems gripping with the right index finger and was unable to completely flex that finger (Tr. p. 73). Dr. Verma concluded that Woods has moderate osteoarthritic changes to her knees, minimal deformity to her right index finger caused by an old injury, no problems walking, bending, or stooping, and her grip strength was almost normal (Tr. pp. 73-74).

In July 2006, Woods complained of low back pain (Tr. p. 100). X-rays of Woods' lumbar spine were negative for fracture of dislocation (Tr. p. 101), and an MRI showed a moderate sized midline disc protrusion at L3-L4, minimal broad based disc protrusions at L4-L5 and L5-S1, and chronic changes of disc dessication at L5-S1, without spinal stenosis or disc extrusions and with well maintained vertebral body height and alignment (Tr. p. 98). Woods was diagnosed with lumbar sprain (Tr. p. 100).

Woods was hospitalized from May 10, 2007, through May 18, 2007 for severe hyperglycemia (blood sugar above 1500) and a change in her mental status (Tr. p. 115). Woods was found to be in a hyperosmolar state[2] with acute mental status changes (awake,

---

[2] Diabetic hyperglycemic hyperosmolar coma is a complication of type 2 diabetes that involves extremely high blood sugar (glucose) levels without the presence of ketones (a by-product of fat breakdown). The condition is usually seen in people with non-insulin-dependent diabetes (type 2 diabetes). It may occur

cooperative, slow thought/speech), acute pancreatitis,[3] and diabetes mellitus (Tr. pp. 115-118, 156, 167); she was given aggressive intravenous rehydration and her blood sugars were corrected (Tr. pp. 115-116, 156).  Due to Woods' chronic renal insufficiency, her medication was changed from Glucophage to Lantus and Glucotrol (Tr. pp. 114, 116).  Woods was noted to have a long-standing history of poorly controlled diabetes (Tr. p. 114), and had been out of medications for one week (Tr. p. 104).  Woods was referred to the outpatient education for diabetes program (Tr. p. 140).

At her administrative hearing, Woods testified that she was 35

---

in those previously undiagnosed with diabetes, or in people who have not been able to control their diabetes with diet and medications.  The condition may be brought on by an infection, or by certain medications that lower glucose tolerance or increase fluid loss.

Normally, the kidneys make up for high glucose levels in the blood by allowing the extra glucose to leave the body in the urine. However, when water is scarce, the kidneys conserve (save) fluid, and glucose levels become higher. This results in greater need for water.

Hyperosmolarity is a condition in which the blood has a high concentration of sodium, glucose, and other molecules that normally attract water into the bloodstream. When the kidneys are conserving water, however, this creates a vicious cycle of increasing blood-glucose levels and increasing dehydration.

MEDLINEplus Health Information, Medical Encylopedia: Diabetic hypergblycemic hyperosmolar coma, *available at* http://www.nlm.nih.gov/medlineplus/ency/article/000304.htm (a service of the U.S. National Library of Medicine and the National Institutes of Health).

[3] Pancreatitis is an inflammation or infection of the pancreas.  The pancreas is located behind the stomach.  It releases the hormones insulin and glucagon and substances that help with digestion.  MEDLINEplus Health Information, Medical Encylopedia: Pancreatitis, *available at* http://www.nlm.nih.gov/medlineplus/ency/article/001144.htm (a service of the U.S. National Library of Medicine and the National Institutes of Health).

years old, right-handed, had a GED, could read, write and do math, and had taken some college classes (Tr. p. 410). Woods testified that she last worked in October 2005 as a cashier at a grocery store for two months; before that she was a cashier at a drug store in Colorado and a housekeeper at a nursing home (Tr. pp. 410-411). Woods testified that she had stopped working due go an on-the-job injury to her back for which she took physical therapy, but she did not receive worker's compensation, did not have surgery, and was not still being treated for that injury (Tr. p. 411).

Woods testified that she is not married, has one child (two years old), and lives with her daughter and her fiancé, who is a cab driver (Tr. p. 412).

Woods testified that she is taking Lantus, an insulin for her diabetes, Lisinopril, a blood pressure medication, Prevacid for acid reflux, Vitorin to control her cholesterol, Hydracholozine for her blood pressure, Metformin, a glucophage for her diabetes, Tramadol for pain in her lower back, tailbone, and pelvic area, and Lipizid (Tr. p. 413). Woods testified that the Tramadol relieves her pain some (Tr. p. 413). Woods testified that her lower back pain travels over her entire body (Tr. p. 414).

Woods testified that she does not drive, does not own a car, and does not have a current driver's license (Tr. p. 414). Woods testified that she showers and dresses herself, but does not take out the garbage and does not work in the yard (Tr. p. 415). Woods testified that she does not grocery shop because she does not like to leave the house due to always being tired (Tr. p. 415). Woods

7

admitted that she was able to grocery shop (Tr. p. 415). Woods testified that, if she sits more than twenty minutes, her back and tailbone hurt, so she needs to get up and stretch (Tr. pp. 415-416). Woods testified that standing more than 15 to 20 minutes affects her knees and causes numbness in her feet (Tr. p. 416). Woods testified that she cannot squat (Tr. p. 416). Woods testified that she can lift about ten pounds, but has pain due to tendonitis in her arms if she lifts more than that (Tr. p. 416). Woods testified that she had six weeks of physical therapy for her back in March, and that she was prescribed Tramadol for back pain (Tr. p. 417). Woods testified that her worker's compensation claim for her back injury was settled in January 2007 (Tr. p. 418).

<u>ALJ's Findings</u>

To determine disability, the ALJ applied the sequential process outlined in 20 C.F.R. §404.1520(a) and 20 C.F.R. §416.920(a). The sequential process required the ALJ to determine whether Woods (1) is presently working; (2) has a severe impairment; (3) has an impairment listed in or medically equivalent to those in 20 C.F.R. Pt. 404, Subpt. P, App. 1 ("Appendix 1"); (4) is unable to do the kind of work she did in the past; and (5) can perform any other type of work. If it is determined at any step of that process that a claimant is or is not disabled, the sequential process ends. A finding that a claimant is disabled or is not disabled at any point in the five-step review is conclusive and terminates the analysis. <u>Greenspan v. Shalala</u>, 38 F.3d 232, 236 (5th Cir. 1994), cert. den., 914 U.S. 1120, 115 S.Ct. 1984, 131

L.Ed.2d 871 (1995), citing Lovelace v. Bowen, 813 F.2d 55, 58 (5th Cir.1987).

To be entitled to benefits, an applicant bears the initial burden of showing that she is disabled. Under the regulations, this means that the claimant bears the burden of proof on the first four steps of the sequential analysis. Once this initial burden is satisfied, the Commissioner bears the burden of establishing that the claimant is capable of performing work in the national economy. Greenspan, 38 F.3d at 237.

In the case at bar, the ALJ found that Woods has not engaged in substantial gainful activity since June 27, 2006,[4] and that she has severe impairments of diabetes mellitus, obesity, mild degenerative disc disease of the lumbar spine, mild osteoarthritis of both knees, and a history of accidentally cutting her finger three years ago with the inability to completely flex the right index finger (Tr. p. 12), but that she does not have an impairment or combination of impairments listed in or medically equal to one listed in Appendix 1 (Tr. p. 13). The ALJ then found that, August 29, 2006, Woods was still able to perform her past relevant work as a retail sales clerk and, therefore, was not under a disability as defined in Social Security Act at any time through the date of the ALJ's decision on August 29, 2007 (Tr. p. 17). The sequential analysis thus ended at Step 4, with a finding that Woods was not disabled.

---

[4] June 27, 2006, is the date Woods applied for SSI benefits. The date Woods last worked was actually in October 2005 (Tr. p. ***).

9

## Analysis

Woods argues the ALJ erred as a matter of law in finding she can perform the full range of light work.

Initially, the burden is on the claimant to demonstrate that she cannot perform her previous work, that she is unable to engage in substantial employment, and that she meets the duration requirement. Chaparro v. Bowen, 815 F.2d 1008, 1010 (5th Cir. 1987). It is only if the claimant proves that she is unable to engage in her past relevant work (Step 4) that the burden of proof shifts to the Commissioner to show the claimant is able to perform some other type of substantial work in the economy (Step 5). Greenspan v. Shalala, 38 F.3d 232 (5th Cir. 1994); Scott v. Heckler, 770 F.2d 482, 484 (5th Cir. 1985); Ferguson v. Schweiker, 641 F.2d 243, 246 (5th Cir. 1981).

In the case at bar, the ALJ's finding that Woods can perform her past relevant work indicates the ALJ's conclusion that Woods did not meet her burden of proving that she could not return to such work. In order to determine that Woods could perform her former work as a retail cashier, the ALJ was required to directly compare Wood's remaining functional capacities with the actual physical and mental demands of her previous work. Latham v. Shalala, 36 F.3d 482, 484 (5th Cir. 1994). However, while an ALJ has a duty to make a sufficient inquiry into a claim, it is an applicant's burden to prove an inability to perform former work.

Villa v. Sullivan, 894 F.2d 1019 (5th Cir. 1990).[5]  See also, Social Security Ruling 82-61.

In Woods' case, the ALJ noted how little objective medical evidence Woods had submitted and that her examination by Dr. Verma was essentially normal, except for her obesity and the slight loss of flexion in her right index finger (Tr. p. 16).  The ALJ also noted that a state agency medical consultant found Woods capable of medium work with no climbing of ladders, ropes or scaffold (Tr. p,. 16).[6]

Moreover, the ALJ specifically considered Woods' obesity in evaluating her residual functional capacity, noting the lack of medical evidence indicating Woods' obesity impaired her ability to work, but giving Woods "the benefit of the doubt" by reducing her ability to work from medium to light work only (Tr. p. 14).  The Fifth Circuit has held that the Commissioner should examine the medical condition and personal factors that might make it possible or impossible for a particular disabled person to remedy his obesity.  Lovelace, 813 F.2d at 59; Scott v. Heckler, 770 F.2d 482, 486-487 (5th Cir. 1985).  Also, Barrett v. Barnhart, 355 F.3d 1065, 1068 (7th Cir. 2004), citing Lovelace; Brashears v. Apfel, 73 F.Supp.2d 648, 651 (W.D.La. 1999).  There is no medical evidence in

---

[5] The mere inability of a claimant to perform certain requirements of his past job does not mean that he is unable to perform past relevant work as that phrase is used in the regulations.  Leggett, 67 F.3d at 564.

[6] The unidentified, non-examining medical consultant's unsigned residual functional capacity assessment is in the administrative record at pages 75-89).

11

this case to indicate that Woods' obesity is the result of some underlying medical condition and is not reasonably remediable, nor is there any medical evidence indicating her obesity prevents her from performing work.

Woods complains of the ALJ's finding that all or most of her problems would be resolved if she lost weight. The ALJ stated in part (Tr. p. 16),

> "However, for her to come before this forum and complain of total disability is an affront. The only thing truly wrong with her is the lack of discipline to lose weight so she would not have problems with her blood sugars, her knees or her back. Despite being obese, she can certainly do the light to medium range of work assigned to her. If she wants to stay home and do nothing, that is her prerogative; however, she is certainly capable of the residual functional capacity assigned and her past relevant work as a cashier if she is motivated to work. She obviously has a financial interest in qualifying for benefits. Benefits are primarily in cash. She has settled one worker's compensation suit[,] showing a propensity for litigation as a way of supporting herself. She can work if she chooses."

The ALJ's personal opinions as to Woods' lack of self-discipline and litigiousness are irrelevant to the outcome of this case. There is simply no evidence in the record to support Woods' claims of disabling impairments.

As found by the ALJ, Woods has failed to carry her burden of proving that she suffers from a severe impairment which precludes her from performing her past relevant work as a retail cashier. Therefore, substantial evidence supports the Commissioner's finding that Woods is not disabled. Woods' appeal should be denied and dismissed.

<u>Conclusion</u>

Based on the foregoing discussion, IT IS RECOMMENDED that the final decision of the Commissioner be AFFIRMED and that Woods' appeal be DENIED AND DISMISSED WITH PREJUDICE.

Under the provisions of 28 U.S.C. § 636(b)(1)(c) and Fed.R.Civ.P. 72(b), the parties have **ten (10) business days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **ten (10) days** after being served with a copy thereof. A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing. Timely objections will be considered by the district judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN TEN (10) BUSINESS DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

THUS DONE AND SIGNED at Alexandria, Louisiana, on this 27th day of August, 2008.

JAMES D. KIRK
UNITED STATES MAGISTRATE JUDGE